United States District Court
Eastern District of Virginia

Alexandria Division

TAKESHA POWELL,

       *Plaintiff*,

v.                                      Case No. 1:09cv90

CHRIS HEWETT,  *et al.*,

       *Defendants*.

## DEFENDANTS' MORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

The defendants, Chris Hewett, Jason Sharpe, and Keith Mackey, submit this brief in support their motion for summary judgment:

**I.**       **LIST OF UNDISPUTED FACTS PURSUANT TO LOCAL RULE 56(B)**

1.      At approximately 4:00 PM on April 18, 2007, Investigators Chris Hewett ("Hewett") and Jason Sharp ("Sharp") were on patrol in an unmarked police vehicle.

2.      Hewett and Sharp saw a green Ford Contour with a cracked windshield and rental tags.  Hewett and Sharp did not believe the car was a rental so they called in the license plate to check the vehicle's registration.  They were advised that the license plate was registered to a 2007 blue rental vehicle belonging to Avis Rent-A-Car, which was not the vehicle the tags were attached to at that time.  (Hewett Aff. ¶ 2-3).

3.      Hewett and Sharp then pulled the car over in the 500 block of Virginia Avenue. There were two individuals in the car. The plaintiff was the driver and Marquis Bagley ("Bagley") was the passenger.

4.      Hewett and Sharp approached the car.  Hewett went to the driver's side and Sharp went to the passenger's side of the car. (Hewett Aff. ¶ 4-5).

5.      The plaintiff immediately advised Hewett that her license was suspended and her registration was at her home on Bolling Street.  She also informed him that she purchased the car with the license plates that were on the car. (Hewett Aff. ¶ 6).

6.      The plaintiff was acting very anxious and nervous.  She asked several times if she could pull the car around to her home or go to her home to get the registration. (Hewett Aff. ¶ 7).

7.      In light of the plaintiff's behavior, Hewett asked if she had any weapons or illegal narcotics in her vehicle. (Hewett Aff. ¶ 8).  The plaintiff told Hewett that she had a knife. (Hewett Aff. ¶ 9).  At first the plaintiff said the knife was under the seat, and then she told Hewett it was in her purse. (Hewett Aff. ¶ 10, 11, and 12).

8.      Hewett asked plaintiff to get out of the vehicle.  The plaintiff got out of the vehicle with her purse. (Hewett Aff. ¶ 10).  The plaintiff put her purse on the trunk of the car. The plaintiff then reached into her purse several times.

9.      Hewett instructed her not to reach into her purse.  The plaintiff continued to reach into her purse. (Hewett Aff. ¶ 12-13).

10.     While the plaintiff was reaching into her purse, Hewett saw a bag of marijuana and asked the plaintiff about it.  The plaintiff handed Hewett the bag of marijuana.  (Hewett Aff. ¶ 14).

11.     Hewett then began searching the purse for the knife and saw a bag of crack cocaine.  (Hewett Aff. ¶15).

12.     Hewett informed the plaintiff she was under arrest and requested Sharp to handcuff her.  (Hewett Aff. ¶ 16, 17, and 18).  Hewett, Sharp and a third officer, Keith Mackey

("Mackey"), who had just arrived on the scene, attempted to handcuff the plaintiff, but the plaintiff began struggling with the officers.  (Hewett Aff. ¶ 19, 20, 21. Sharp Aff. ¶ 15-16).

13.    During the struggle it appeared to the officers that the plaintiff was reaching for Sharp's gun.  The plaintiff states in her complaint that one of the defendants yelled to the other officers that she was going for his gun.  (Comp. ¶ 21).  Sharp yelled to the other officers "she's got my gun, she's got my gun." (Sharp Aff. ¶ 19-20).  Hewett and Mackey heard Sharp yell to them that the plaintiff had his gun. (Hewett Aff. ¶ 24).

14.    Sharp was wearing his gun in a shoulder holster under his left arm.  The holster and gun were under a shirt that was unbuttoned.  (Sharp Aff. ¶ 18).  Hewett saw the plaintiff's hand under Sharp's shirt, so he began pulling on her arm.  Each time he pulled on her arm, he could see Sharp's holster pull around to the front of his body.  (Hewett Aff. ¶ 26-27).

15.    Sharp, believing that the plaintiff was attempting to disarm him, struck the plaintiff several times in the neck and triceps to get her to release his gun.  (Sharp Aff. ¶ 20).  Mackey struck her once in the leg and once in the neck to gain control over her. (Hewett Aff. ¶ 28).  Sharp then released the magazine of the gun so that it would no longer be able to fire.  (Sharp Aff. ¶ 21).  Hewett saw and heard Sharp's magazine hit the ground.  (Hewett Aff. ¶ 25).

16.    Sharp states that he bent the plaintiff's fingers back in order to get them off of his gun. (Sharp Aff. ¶ 22).

17.    Sharp sprayed Oleoresin Capsicum ("O.C.") into the plaintiff's face, and Mackey hit her in the leg with his baton. (Sharp Aff. ¶ 17).   These two actions allowed the officers to get her to the ground and handcuffed.

18.    After the plaintiff was handcuffed, Mackey irrigated her eyes with water at the scene.  (Hewett Aff. ¶35).

19.     The plaintiff was then transported to the Magistrate's office because a crowd had gathered.  (Hewett Aff. ¶ 39).  At the Magistrate's office, the emergency personnel irrigated her eyes again.  (Hewett Aff. ¶ 36 and Sharp Aff. ¶27).  The plaintiff signed a refusal of treatment form. (Am. Comp. ¶ 2).

20.      The plaintiff was then brought before the Magistrate and was held without bond. (Sharp Aff. ¶ 31).

21.     The plaintiff was then transported to Riverside Regional Jail by an officer other than Hewett, Sharp and Mackey.  (Hewett Aff. ¶ 45).

## II.     SUMMARY JUDGMENT STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The essence of the inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to the jury."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52(1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  After the movant makes the required showing, however, the party opposing the motion must set forth specific facts, supported by evidence, showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.  The opposing party may not rest on the mere pleadings. *Celotex*, 477 U.S. at 324.  "In determining whether summary judgment is appropriate, we must determine 'whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Odom v. South Carolina Dept. of Corrections,* 349 F.3d 765, 769 (4th Cir. 2003) (*quoting Anderson*, 477 U.S. at 251-52). A mere scintilla of proof will not prevent the entry of summary judgment. *Peters v. Jenney,* 327 F.3d 307, 314 (4th Cir. 2003).

## III.   ARGUMENT

The plaintiff is unable to prove a case of unconstitutionally excessive force or denial of medical treatment. The court should grant summary judgment on both claims for two reasons. First, the defendants did not violate the plaintiff's constitutional rights. Second, the defendants are protected by qualified immunity.

### A.  Qualified Immunity

The defendants are protected from civil liability by qualified immunity. The doctrine of qualified immunity shields law enforcement officers performing discretionary duties "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). Claims of qualified immunity are appropriate for resolution on summary judgment because immunity is an "entitlement not to stand trial or face other burdens of litigation." *Turner v. Dammon*, 848 F.2d 440, 443 (4th Cir. 1988).

In order to determine whether qualified immunity applies to the defendants, the court reviews two factors.[1] First, the court must review whether a constitutional right was violated. Second, the court must determine whether the alleged right was clearly established at the time of the incident. If the court finds either that a right was not violated or that the right was not clearly

---

[1] The Supreme Court recently ruled in *Pearson v. Callahan*, 129 S.Ct. 808 (2009), that the courts no longer need to review the two elements in any particular order as was previously required under *Saucier v. Katz*, 533 U.S. 194 (2001). However, this brief will address the issues in the traditional *Saucier* order.

established at the time of the event, then qualified immunity applies. *Turmon v. Jordan*, 405 F.3d 202, 204 (4th Cir. 2004).  Plaintiff has failed to allege that a constitutional right was violated; therefore, qualified immunity should apply.

The plaintiff has apparently alleged a violation of her Fourth Amendment Rights and Fourteenth Amendment rights.  A review of each of the claims on the merits shows that no violation has occurred.

B.      **Fourth Amendment Rights**

The defendants did not use excessive force when arresting the plaintiff.  "The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person." *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997)(*en banc)*. The court must balance the nature and quality of the intrusion of an individual's Fourth Amendment interests against the countervailing governmental interests at stake to determine if the force used by officers to effect a seizure was reasonable.  *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1871 (1989).  There is no bright line test, so the courts must take into account the "totality of the circumstances" when assessing the reasonableness of force used by an officer. *Tennessee v. Garner*, 471 U.S. 1, 8 – 9, 105 S.Ct. 1694, 1700 (1985).  The court views the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.  In *Graham*, the court stated that the "proper application [of the standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

The undisputed facts show that the officers' actions were reasonable in light of the circumstances confronting them.  The plaintiff was initially pulled over for a minor violation, but the severity of the crime at issue continually escalated during the incident.  First, the plaintiff was pulled over for a cracked windshield and problem with her vehicle registration.  The severity of the crime immediately escalated to driving on a suspended license.  Then she admitted that she had a weapon and was found to be in the possession of illegal narcotics.  Finally, she resisted arrest.

The plaintiff also presented a direct threat to the safety of the officers and others.  She had a knife.  She told Hewett the knife was in her purse, and she continually attempted to reach into her purse even after the officers told her not to reach into the purse.  The knife was a direct threat to the safety of the officers and others.

The plaintiff also presented a direct threat to the safety of the officers by grabbing Sharp's gun and fighting with the officers.  The facts, even taken in the light most favorable to the plaintiff, show that the officers believed the plaintiff was trying to grab Sharp's gun.  Plaintiff states that she heard one of the officers yell that she was going for his gun.  Sharp states that he yelled to the other officers, "She's got my gun, she's got my gun."  Sharp Aff. ¶ 20 and Hewett Aff. ¶ 24.  The courts have held that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Johnson v. Glick*, 481 F. 2d 1028, 1033 (2nd Cir. 1973).  Even if the plaintiff was not attempting to disarm Sharp, she appeared to the officers to be doing so, and the officers' actions were a reasonable response.

Finally, the plaintiff actively resisted arrest. She struggled with all three officers.  They told her several times to stop resisting.  She continued to resist in spite of these orders.

In light of the facts and circumstances of this particular case, the force used by the officers was reasonable when viewed from the perspective of a reasonable officer dealing with an armed suspect who attempted to grab one of the arresting officer's guns.  Case law supports this position.  In a recent case similar to the instant case, the court granted summary judgment to the officer on an excessive force claim.  *Riddle v. Baber*, 2005 U.S. Dist. LEXIS 23580 (W.D.Va. Oct. 14, 2005).  In *Riddle*, the officer struck the plaintiff in the face and sprayed him twice with pepper spray because he threatened the officer with a child's chair and resisted arrest. The judge found in *Riddle*, "the plaintiff's resisting arrest created a threat of harm to Officer Baber, justifying the officer's use of reasonable force."  Riddle, 2005 U.S. Dist. LEXIS at 10.

In another case, *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002), the court found the officers' use of force was not excessive.  In Brown, the plaintiff was an autistic child who assaulted a police officer threatened officers and actively resisted arrest.

The court held in *Alford v. Cumberland County*, 2007 U.S. App. LEXIS 24138 (4th Cir. 2007) that the officer did not use excessive force when he shot the plaintiff twice at close range because the officer was worried the plaintiff may attempt to take his gun.  In *Alford*, the court justified the shooting on the basis that "a reasonable police officer could have believed that if he paused for even an instant, he risked losing his last chance to defend himself."  The plaintiff in this case presented an even greater threat to the officers than the plaintiff in *Alford*.  The plaintiff had her hand on Sharp's weapon and he was forced to eject the magazine, which rendered the gun useless except as a club.  All of the officers heard Sharp yell that the plaintiff grabbed his weapon.   In light of the circumstance, the force used by the officers was not excessive.  The court should dismiss the claim of excessive force as a matter of law.

### C.  Medical Treatment

The plaintiff's claim under the Fourteenth Amendment fares no better. The courts have held that a pre-trial detainee's claims for inadequate medical care are properly analyzed under the Fourteenth Amendment. *Patten v. Nichols*, 274 F.3d 829, 834 (4th Cir. 2001). "The Fourteenth Amendment right, like the Eight Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver et. al.*, 898 F.2d 32, 34 (4th Cir. 1990). "A pretrial detainee makes out a due process violation if he shows deliberate indifference to serious medical needs." *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988).

In order to establish the defendants were deliberately indifferent, the plaintiff must present facts that the defendants had actual knowledge of and disregard for an objectively serious medical need. Essentially, the plaintiff must prove two things: (1) that objectively the deprivation of a basic human need was sufficiently serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). The first element "is satisfied by a serious medical condition," while the second element "is satisfied by showing deliberate indifference by prison officials." *Johnson*, 145 F.3d at 167 (4th Cir. 1998). Mere negligence does not constitute deliberate indifference; the officer must be "aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994).

First, the plaintiff must assert facts that objectively show that her injuries were a serious medical condition. The plaintiff states that she was sprayed with mace, and she had a fractured finger, bruises around the neck and leg, a blood clot on her right breast and lower back pain. For purposes of this motion, the defendants assume that the injuries are objectively serious.

The plaintiff fails, however, to meet the second test.  The defendants were clearly not indifferent to the plaintiff's medical needs.  They called emergency personnel to attend to any injuries the plaintiff may have suffered during the incident at the scene.  Mackey irrigated the plaintiff's eyes with water at the scene to counteract the O.C. spray.  The emergency crew also irrigated her eyes with water.

The defendants were not indifferent to the plaintiff's broken finger, either; they simply were not aware of it. The plaintiff does not allege that anyone could see swelling, discoloration, bleeding or visibly broken bones at the scene.  Her injuries, if any, were not obvious to the defendants.  Plaintiff does not allege that she told the officers her finger was broken.  The plaintiff alleges that she was tricked into signing a waiver of medical services form, but she was provided x-rays by Riverside Regional Jail.  The defendants were not deliberately indifferent to a serious medical need and therefore did not violate the plaintiff's Fourteenth Amendment rights. The court should dismiss the claim for deliberate indifference as a matter of law.

### D.     No Clearly Established Right

Assuming that the defendants somehow violated a constitutional right, the right was not clearly established at the time of the events in this case.  A right is clearly established at the time of the incident if a reasonable person would have known of such right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).

The officers reasonably believed that their use of force was appropriate and did not violate the plaintiff's rights in light of *Riddle, Brown and Alford.   Riddle v. Baber*, 2005 U.S. Dist. LEXIS 23580 (W.D.Va. Oct. 14, 2005); *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002); and *Alford v. Cumberland County*, 2007 U.S. App. LEXIS 24138 (4th Cir. 2007).  The courts disposition in these cases provides a reasonable basis for the officers to believe that they

could strike the plaintiff and use O.C. spray on the plaintiff in order to protect themselves and the other officers from harm.

The officers also reasonably believed that their actions to address the plaintiff's known injuries were appropriate and did not violate the plaintiff's rights.  The officers were unaware of the plaintiff's broken finger and did not deliberately disregard any medical need.  The officer's failure to provide medical care for an unknown injury was not a clearly established right at the time of the incident.  See *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970 (1994).   In *Johnson*, doctors misdiagnosed the plaintiff's pituitary tumor, which later led to the plaintiff going blind.  The court held even if the doctors should have diagnosed the tumor, they did not violate the plaintiff's rights unless they did know about it and disregarded it.  *Johnson v. Quinones*, 145 F.3d at 168-169.  In our case, the officers reasonably believed that they must be aware of an injury and disregard such injury to violate the plaintiff's rights.

**E.      Conclusion**

WHEREFORE, for the reasons stated, defendants, Chris Hewett, Jason Sharpe, Keith Mackey, ask the Court to grant their Motion for Summary Judgment and dismiss this case with prejudice.

Chris Hewett, *et al*.


By _____/s/_____
              Counsel

John A. Gibney, Jr. VSB No. 15474
Sarah B. Warner, VSB No. 71537
ThompsonMcMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23219
(804)698-6214
Fax (804)780-1813
jgibney@t-mlaw.com
swarner@t-mlaw.com


Certificate of Service

I certify that on November 18, 2009, I mailed a copy of the foregoing to Takesha Lavette Powell, No. 382462, Virginia Correctional Center for Women, P.O. Box 1, Goochland, Virginia 23063

_____/s/_____
John A. Gibney, Jr. VSB No. 15754
Sarah B. Warner, VSB No. 71537
ThompsonMcMullan, P.C.
100 Shockoe Slip
Richmond, Virginia 23219
(804)698-6214
Fax (804)780-1813
jgibney@t-mlaw.com
swarner@t-mlaw.com