# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | |
|---|---|
| Takesha Powell, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:09cv90 (AJT/IDD) |
| ) | |
| Chris Hewett, et al., ) | |
| Defendants. ) | |

F I L E D
MAY - 3 2010
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## MEMORANDUM OPINION

Takesha Powell was a Virginia inmate proceeding pro se when she filed this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants used excessive force and violated her right to medical treatment when they arrested her for drug possession.[1] Defendants Hewett, Sharp, and Mackey have filed a Motion for Summary Judgment, asserting that summary judgment should be granted in their favor because plaintiff's constitutional rights were not violated and because the defendants are protected by the doctrine of qualified immunity.[2] Powell was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and she has not filed a response.

On February 12, 2010, defendants filed a Motion to Grant Defendant's Motion for Summary Judgment as Unopposed, in which defendants state that documents mailed to plaintiff's address at the Virginia Correctional Center for Women were returned undeliverable. After defendants learned that plaintiff had provided a new address following release, defendants sent documents to that address, which were returned as "Attempted – Not Known." Following a

---

[1] On September 3, 2009, Powell submitted a letter indicating that she would be released from custody on November 5, 2009, and providing a forwarding address.

[2] On the same day the Motion for Summary Judgment was filed, defendants also filed a Motion to Amend Motion for Summary Judgment, in which they move to include a date on the certificate of service for the Motion for Summary Judgment, and that Motion will be granted.

conversation with the Clerk's Office, counsel for defendants informed the Court on March 9, 2010 that the documents would be resent to plaintiff by regular mail, and the Court has received no information suggesting that those documents were not received by plaintiff. Accordingly, defendants' Motion to Grant Defendant's Motion for Summary Judgment as Unopposed will be denied, and for the reasons stated below, defendants' Motion for Summary Judgment will be granted.

## I. Factual Background

The following material facts are uncontested. At approximately 4:00 pm on April 18, 2007, defendants Hewett and Sharp observed a car that bore rental tags but did not appear to be a rental car. Hewett Aff. ¶ 3; Sharp Aff. ¶ 3. Hewett and Sharp, both of whom were employed by the Petersburg Police Department as investigators, pulled over the car, which was occupied by plaintiff, who was the driver, and a passenger. Hewett Aff. ¶ 5; Sharp Aff. ¶ 5. Plaintiff's nervous and anxious behavior prompted Hewett to ask plaintiff if she had any weapons or illegal narcotics in her car. Hewett Aff. ¶ 8. Plaintiff replied that she had a knife in her purse, she began rummaging through the purse, and Hewett then noticed marijuana inside the purse. Hewett Aff. ¶¶ 12-14. When Hewett looked inside her purse for the knife, he found both the knife and a bag of crack cocaine. Hewett Aff. ¶ 15. At that time, plaintiff was informed that she was under arrest. Hewett Aff. ¶ 16. Shortly thereafter, plaintiff lunged at Hewett, who was holding her purse, and tried to grab the cocaine from her purse. Hewett Aff. ¶ 19. Hewett pinned plaintiff's wrist, which was inside her purse, against the trunk of the car because he feared that plaintiff might try to swallow the cocaine. Hewett Aff. ¶ 20. Plaintiff struggled with Hewett, making it difficult for the officers to handcuff her. Hewett Aff. ¶ 21. When plaintiff continued struggling after Hewett yelled at her to stop resisting arrest, defendant Mackey, a third officer who had just arrived at the

scene, sprayed plaintiff with Oleoresin Capsicum ("O.C.") spray in an unsuccessful attempt to subdue her. Hewett Aff. ¶¶ 22-23. Sharp then realized that plaintiff had grabbed his gun, which was strapped under his left arm. Sharp Aff. ¶ 19. Sharp yelled to the other officers that plaintiff had his gun, and he struck her several times in an attempt to force plaintiff to release the gun. Sharp Aff. ¶ 20. Plaintiff did not release the gun, so Sharp then released the magazine to prevent the gun from firing and then peeled plaintiff's fingers off of Sharp's gun. Sharp Aff. ¶¶ 21-22. Sharp did not hear plaintiff's finger break. Sharp Aff. ¶ 22. At the same time, Mackey struck plaintiff in the leg with his baton, and after Sharp sprayed plaintiff with O.C. spray, plaintiff fell to the ground, and defendants were able to handcuff her. Hewett Aff. ¶ 32; Sharp Aff. ¶¶ 23-24.

Following the incident, an ambulance and a supervisor arrived at the scene at the request of defendants, and Mackey and the emergency crew flushed plaintiff's eyes with water. Sharp Aff. ¶ 27. The emergency crew asked plaintiff if she would like to be transported to the hospital, and she declined the offer without mentioning an injured finger. Hewett Aff. ¶ 38. Afterwards, plaintiff was transported to the Magistrate's Office, where she signed a statement in which she refused further treatment.[3] Sharp Aff. ¶ 29. Plaintiff was too uncooperative to be fingerprinted or to participate in a bond hearing, so the Magistrate ordered her held without bail. Sharp Aff. ¶¶ 31-32. Plaintiff did not complain of any injuries at the Magistrate's office, except trouble with her eyes. Sharp Aff. ¶ 33. In her complaint and amended complaint, plaintiff asserts that the incident resulted in a broken finger and blood clots. Compl. ¶ 26. Exhibits submitted by plaintiff demonstrate that plaintiff was examined by medical personnel at the Riverside Regional Jail on

---

[3] Plaintiff asserts in an unsworn statement that she did not realize that she was signing a form refusing medical treatment. Am. Compl. 1. Taking plaintiff's statement as true, she does not dispute that she refused treatment; plaintiff only states that she was unaware of the actual purpose of the form she signed.

April 19, 2007. Am. Compl. Exh. 4. As relief, plaintiff seeks $100,000 in damages from each defendant.

### III. Standard of Review

In reviewing defendants' Motion for Summary Judgment, the Court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . ., an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson, 477 U.S. at 247-48) (internal quotation marks omitted). Accordingly, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

## IV. Analysis

Summary judgment in favor of defendants is appropriate because the pleadings, affidavits, and exhibits on file demonstrate that defendants did not violate plaintiff's constitutional rights.[4]

### A. Use of Excessive Force During the Arrest

Plaintiff first argues that defendants used excessive force during the arrest in violation of the Fourth Amendment. The Supreme Court has squarely held that "[a]*ll* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . .". Graham v. Connor, 490 U.S. 386, 395 (1989) (emphasis in original); see also County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998). Courts consider the totality of the circumstances when evaluating the reasonableness of an officer's use of force during an arrest. Tennessee v. Garner, 471 U.S. 1, 8-9 (1985). Factors to consider include the severity of the crime, the likelihood that the suspect poses a threat to the safety of officers and others, and the suspect's behavior during arrest. Graham, 490 U.S. at 396.

In this case, the affidavits and exhibits demonstrate that the officers' actions were reasonable under the circumstances. While the crime for which plaintiff's car was initially pulled over was a relatively minor violation,[5] she was not arrested for that offense; she was arrested for and charged with incidents that followed the pull-over, namely drug possession, disarming an officer, obstruction of justice, and three misdemeanors. These crimes are certainly severe in

---

[4] Because the Court finds that defendant did not violated plaintiff's constitutional rights, it is not necessary to assess further whether defendants are entitled to qualified immunity. See Turmon v. Jordan, 405 F.3d 202, 204 (4th Cir. 2004) (citing Saucier v. Katz, 533 U.S. 194, 199 (2001) in holding that if a constitutional right was not violated, "that ends the matter.").

[5] Defendants' affidavits and plaintiff's complaint appear to indicate that she was pulled over because the car bore improper tags.

5

nature. See Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005) (noting that an assault that did not result in any significant harm to the victim was still severe enough to meet the first Graham factor). Regarding the next Graham factor, plaintiff does not dispute that there was a knife in her purse, and she admits in an unsworn statement that she was holding onto her purse even after the officers ordered her to release it. Am. Compl. 1. Furthermore, plaintiff does not dispute that she reached for Sharp's gun, and that a crowd had gathered around the altercation at that point. Thus, it was reasonable for the officers to believe that plaintiff posed a threat to both themselves and to others in the area. Finally, the suspect demonstrated aggressive behavior when defendants attempted to arrest her, and she refused to cooperate even after being struck in the neck and arm as the officers attempted to subdue her. Therefore, there was no use of excessive force, and defendants are entitled to summary judgment on plaintiff's first claim.

### B. Denial of Reasonable Medical Treatment

Next, plaintiff argues that defendants denied her reasonable medical treatment for the injuries that occurred during the arrest. Because plaintiff was a pretrial detainee at the time of the alleged constitutional violation, her claims are governed by the Due Process Clause of the Fourteenth Amendment. Patten v. Nichols, 274 F.3d 829, 834 (4th Cir. 2001). It is well-established, however, that the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). To support a claim of a denial of reasonable medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Thus, plaintiff must first demonstrate a sufficiently serious medical need. See, e.g., Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an

untreated broken arm is sufficiently serious). Second, a plaintiff must show deliberate indifference to that serious medical need; mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851.

Here, the record and exhibits demonstrate that there is no genuine issue of material fact regarding the constitutionality of plaintiff's medical treatment. Plaintiff avers that she suffered a broken finger, blood clots, back pain, and bruises following the altercation with the officers. Assuming without deciding that these injuries constitute serious medical needs, the record and exhibits demonstrate that defendants were not deliberately indifferent to plaintiff's needs. An exhibit submitted by plaintiff shows that she refused medical treatment at the time of the incident. Am. Compl. Exh. 5.[6] Defendants' affidavits show that they called medical personnel after they managed to subdue plaintiff, in case she suffered injuries during the altercation. Nowhere in the record or in plaintiff's filings does plaintiff allege that she requested medical treatment from defendants. Indeed, defendants called emergency personnel, who arrived at the scene and treated plaintiff's eyes. As the defendants themselves are not medical professionals, they clearly acted reasonably in calling emergency personnel to assist plaintiff. Plaintiff has not stated that defendants were aware of any injuries suffered except for problems with her eyes, and

---

[6] Although plaintiff alleges states in an unsworn filing that she was tricked into signing the form, which she allegedly believed pertained to x-rays that would be performed, the form clearly states that it is a refusal of medical treatment form. In this situation, the version of the facts supported by the record prevails. See Scott, 550 U.S. at 380 ("[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Furthermore, even accepting plaintiff's version as true, there is still no evidence that plaintiff requested medical treatment from defendants.

defendants aver that they never noticed a broken finger. Thus, there is no evidence that defendants were deliberately indifferent to plaintiff's needs, and plaintiff's Fourteenth Amendment rights were not violated.

## VI. Conclusion

For the reasons stated above, defendants' Motion for Summary Judgment will be granted and summary final judgment will be entered in their favor. An appropriate order shall issue.

Entered this 3rd day of May 2010.

Alexandria, Virginia

Anthony J. Trenga
United States District Judge